377 F.2d 665
 SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
R. A. HOLMAN & CO., Inc., Richard A. Holman and Irving
Bienenstock a/k/aIrving Burns, Defendants-Appellants.
R. A. HOLMAN & CO., Inc., Petitioner,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 Nos. 418, 419, Dockets 30039, 30276.
 United States Court of Appeals Second Circuit.
 Petitions for Rehearing Submitted Oct. 20, 1966.
Decided May 15, 1967.
 
 Sidney P. Howell, Jr., New York City, (Rogers, Hoge & Hills, New York City, Arnold & Porter, Washington, D.C., and Richard A. Holman, New York City, on the brief), for petitioners.
 Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Solicitor, Martin D. Newman, Atty., S.E.C., Washington, D.C., for appellee.
 Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The opinions of this Court in the above entitled proceedings were filed on September 21, 1966. See SEC v. R. A. Holman & Co., 2 Cir., 366 F.2d 456 (No. 30039) and R. A. Holman & Co. v. SEC, 2 Cir., 366 F.2d 446 (No. 30276). R. A. Holman & Co., Inc., Richard A. Holman and Irving Bienenstock, as defendants-appellants in No. 30039 and R. A. Holman & Co., Inc., as petitioner in No. 30276, now petition for rehearings of the appeals in said cases. We grant the petition for rehearing in No. 30276 and amend our former opinion in conformity with this opinion. The petition for rehearing in No. 30039 is denied, as we adhere to our former opinion.
 
 
 2
 The most serious allegations of factual error, contained in R. A. Holman & Co.'s rehearing petition in No. 30276, pertain to that part of the Court's opinion that deals with the offer and sale of Precise stock. 366 F.2d at 448-450. We there upheld the Commission's findings that petitioner (1) purchased Precise stock while still participating in its distribution in violation of Rule 10b-6; (2) engaged in activities designed to induce or effect the purchase or sale of Precise stock without disclosing the fact of its control of Precise in violation of Rule 15c1-5; and (3) made misleading and unjustifiable representations to customers as to the value of Precise stock.
 
 
 3
 Petitioner claims that the Court confused the 'unit' of Precise stock offered to the public (consisting of one share of common stock and one share of preferred convertible into four shares of common) with a 'share' of Precise common, equivalent to only 1/5 the value of the 'unit.' Thus with respect to the Kabian transaction, petitioner complains that it was misleading for this Court to state that 13,000 units were allocated to Mr. Kabian's account on December 30, 1958 on a delayed delivery basis, and that after Mr. Kabian cancelled, Richard A. Holman, petitioner's president, subsequently put 10,000 shares of Precise common into petitioner's trading account and sold them to the public. Petitioner asks whether we fully realized that after the sale of 10,000 shares there were still 55,000[1] (or its equivalent) shares of common in petitioner's account left over from the cancelled Kabian order. We were not under any basic misconception as to the distinction between shares or units with respect to this transaction; certainly the purchase and sale of 10,000 shares by petitioner during 'distribution' is enough to establish a serious violation of Rule 10b-6. In the next paragraph, 366 F.2d at 449, however, we did refer to 33,200 shares of stock being sold by December 31, 1958 when the reference should have been to 33,200 units. This appears to have been a mere slip in view of the correct reference to 33,200 units earlier on the same page. Thus, while the mistake is noted and corrected, it did not undermine the factual basis for the Court's finding against petitioner with respect to the Kabian transaction.
 
 
 4
 The factual basis for our conclusion that Holman was 'controlling' Precise on December 9, 1958, is also challenged. Prior to the public offering, 130,000 shares of Precise common stock were outstanding-- 55,000 in the name of Byron, 75,000 in the name of Silber. This Court stated that by December 9, 1958 (the date Holman bought Silber's 75,000 shares) 15,220 shares of the new offering had been sold so that the total shares of common stock then outstanding were 145,220, thus leaving Holman holding a 'majority' of the stock. This might be technically correct, but we failed to mention that 15,220 shares of preferred stock (equivalent of 60,880 shares of common) were, of course, issued along with the 15,220 common as part of each offering unit. Holman was thus a 'majority' holder of Precise common only if the owners of the preferred had not by December 9th exercised some of their conversion rights of which there is no proof. In any event, since the 15,220 shares of preferred stock which had been issued also had voting rights, Holman at that time held slightly less than a majority of the voting stock. However, it is generally recognized that to 'control' a corporation within the meaning of Rule 15c1-5, 17 C.F.R. 240.15c1-5, it is not necessary to own a majority of the corporation's voting stock. See Loss, Securities Regulation, 765, 770-83 (2d ed. 1961) Even if Holman did not own a majority of Precise voting stock on December 9, 1958, he certainly was the dominant shareholder exercising effective control over the corporation and his failure to disclose such fact violated Rule 15c1-5.
 
 
 5
 In upholding the Commission's findings with respect to petitioner's misrepresentations as to the value of Precise stock, we referred to a 'sharp drop' in the market immediately after the public offering was closed uncompleted. In fact, as petitioner points out, there was no drop as the offering price had been $5 per unit and the after market price of the common fluctuated between 1 and 1 7/8 per share (the equivalent of 5 to 9 3/8 per unit). But, of course, the company did go into bankruptcy in November, 1959. Our error should be corrected, but does not dictate a different conclusion with respect to the misrepresentation charge. The fact remains that during the relevant times when petitioner was actively recommending Precise stock to its customers, Precise was in a precarious financial position and petitioner's salesmen knew it but chose not to pass on the information to their customers. That the investment did not prove worthless until several months later and that during part of that time the customers could have sold at a profit, does not justify the initial misrepresentation.
 
 
 6
 Petitioner's other arguments advanced in its petition for rehearing do not pertain to this Court's understanding of the underlying facts of the controversy but criticize our conclusions of law on several material points. We have reviewed those conclusions and reaffirm them. Our affirmances in No. 30276 and No. 30039 stand.
 
 
 
 [1]
 This figure is presumably calculated by taking the 13,000 units sold to Kabian, namely, 13,000 common and 13,000 preferred convertible into common at the ratio of 4 to 1, and then assuming conversion resulting in 52,000 shares or a total of 65,000 shares of common. There is no proof that any such conversion had taken place